UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

UNITED STATES OF AMERICA,     Plaintiff,

v.     Criminal Action No. 3:16-cr-109-DJH

JUSTIN AVERY BOOKER,     Defendant.

\* \* \* \* \*

**MEMORANDUM OPINION AND ORDER**

Defendant Justin Booker is charged with possessing heroin, methamphetamine, and cocaine with intent to distribute them and being a felon in possession of a firearm. (Docket No. 1) He has filed two motions to suppress. (D.N. 20, 21) The first motion seeks suppression of statements or evidence obtained through Booker's interrogation by law enforcement at his home on May 12, 2016, on the ground that Booker's waiver of his *Miranda* rights may have been invalid. (D.N. 20, PageID # 47) The second motion argues that statements in the affidavit supporting the search warrant executed at Booker's home were false or made in reckless disregard of the truth. (D.N. 21, PageID # 53) The Court held an evidentiary hearing on August 2, 2017, and took the motions under advisement. (D.N. 30) Based on the evidence presented at the hearing, the Court will deny Booker's motions to suppress.

**I.**

On May 12, 2016, Louisville Metro Police Department Detective William Bower sought a warrant to search Booker's home at 4308 Belrad Drive in Louisville, Kentucky. (D.N. 31, PageID # 83) In his affidavit supporting the warrant request, Bower stated that "[a] reliable confidential informant . . . said that Justin Booker is selling cocaine and other drugs from 4308 Belrad Dr[ive] while in possession of handguns. This informant has proven his/her reliability in

1

the past with information which resulted in numerous felony arrests/convictions and drug seizures." (D.N. 21-1, PageID # 57) Bower further averred that he "ha[d] personal experience with Booker selling narcotics from this location" three years earlier (*id.*) and that "[w]ithin the last 48 hours a controlled narcotics buy was made from Booker at 4308 Belrad Dr." (*Id.*, PageID # 58)

The search warrant was issued and executed later the same day. (D.N. 31, PageID # 90) Based on a preliminary risk assessment, a SWAT team initially secured the premises. (*Id.*, PageID # 89-90, 97) Although the SWAT team entered with guns drawn, LMPD officers who were present that day did not witness any violence or intimidation toward Booker or any other person in the house, and they heard no complaints of any such behavior. (*Id.*, PageID # 88, 90, 146, 155, 163, 169-70)

A bodycam recording made by Bower during the search shows that Bower led Booker into a bedroom for questioning.[1] He then recited the *Miranda* warnings and asked Booker, "Do you understand all that?" Booker nodded. (Gov't Hr'g Ex. 2 at 2:20-2:33) Asked whether there was anything he wanted to tell Bower, Booker revealed that he had drugs in his pocket. (*Id.* at 2:53) When Bower asked whether there were guns in the house, Booker stated that the mother of one of his children, who had recently moved out, might have left a gun there, but that he did not have any guns. (*Id.* at 3:26) At the end of the interrogation, Bower placed a cigar in Booker's mouth; he later lit the cigar at Booker's request. (*Id.* at 5:00-6:30) Another officer went to a different bedroom to retrieve shoes and cigarettes for Booker's stepfather. (*Id.*) A handgun was ultimately found in the house. (D.N. 31, PageID # 98-99)

---

[1] Bower explained at the hearing that he did this so that Booker would not feel uncomfortable talking about illegal activity in front of his mother and stepfather. (D.N. 31, PageID # 89)

2

Bower testified at the hearing regarding the confidential informant cited in the affidavit, whose alias was Papermate. (*Id.*, PageID # 118) Bower stated that he had worked with Papermate for at least ten years and that Papermate had proved to be credible, providing information that led to "numerous drug seizures and arrests and convictions." (*Id.*, PageID # 84; *see also id.*, PageID # 136-37 (testifying that Papermate had given him accurate information "[o]n many occasions" between 2006 and 2016)) Bower testified that Papermate had provided the information about Booker in exchange for money; however, on the informant activity/payment form Bower completed in connection with the controlled buy (which was conducted by Papermate), he checked a box indicating that Papermate was "working with officer in anticipation of obtaining favorable court review of pending charges." (Def.'s Hr'g Ex. 2; *see* D.N. 31, PageID # 110, 118) Bower was unable to explain this discrepancy.[2] (D.N. 31, PageID # 121-23) He did not believe that Papermate had pending criminal charges at the time the form was completed, though he did believe Papermate "ha[d] been in the criminal justice system since 2006." (*Id.*, PageID # 115; *see id.*, PageID # 122-23) Sergeant King, who is Detective Bower's supervisor, confirmed that Papermate had a long history of cooperation with LMPD, noting that when he took over the unit in 2010, Papermate was already an established informant. (*Id.*, PageID # 149-50; *see id.*, PageID # 143)

## II.

Booker challenges the validity of his *Miranda* waiver and Bower's reliance on a confidential informant. Neither argument is supported by the evidence.

---

[2] While Bower thought Papermate was working for money, Detective Dewitt understood Papermate to be working off charges (D.N. 31, PageID # 164-65), and Sergeant King testified that "[i]t was a combination of both working off charges"—either Papermate's own, or a family member's—"and for money as well." (*Id.*, PageID # 150; *see id.*, PageID # 151) As discussed below, the officers' conflicting testimony is inconsequential.

3

A.     *Miranda*

The basis for Booker's first motion is unclear. In his motion, Booker merely asserted that following a search of his home on May 12, 2016, he was taken into custody and interrogated by law enforcement. (D.N. 20, PageID # 47-48) He noted that the United States bears "[a] heavy burden . . . to demonstrate that [a] defendant knowingly and intelligently waived his privilege against self-incrimination and his right to appointed counsel," but he did not argue that his waiver was invalid. (*Id.*, PageID # 48 (quoting *Miranda v. Arizona*, 384 U.S. 436, 475 (1966)). At the August 2 hearing, Booker's counsel pointed out that Bower did not ask Booker whether he wished to waive his *Miranda* rights. (D.N. 31, PageID # 179) Defense counsel further urged the Court to consider "how the search warrant was executed" in deciding whether Booker's waiver was valid. (*Id.*, PageID # 180)

> The *Miranda* waiver inquiry "has two distinct dimensions":
>
> First, the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception. Second, the waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it. Only if the "totality of the circumstances surrounding the interrogation" reveals both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the *Miranda* rights have been waived.

*Moran v. Burbine*, 475 U.S. 412, 421 (1986) (quoting *Fare v. Michael C.*, 442 U.S. 707, 725 (1979)). The "heavy burden" imposed by *Miranda* "is not more than the burden to establish waiver by a preponderance of the evidence." *Berghuis v. Thompkins*, 560 U.S. 370, 385 (2010) (citing *Colorado v. Connelly*, 479 U.S. 157, 168 (1986)).

Although Booker's counsel suggested that his waiver was lacking because he did not expressly state that he wished to waive his rights, the law is clear that an express waiver is not

required.³ *See United States v. Adams*, 583 F.3d 457, 467 (6th Cir. 2009) (citing *United States v. Miggins*, 302 F.3d 384, 397 (6th Cir. 2002)). "Rather, courts may infer an implied waiver 'from the actions or words of the person interrogated.'" *Id.* (quoting *North Carolina v. Butler*, 441 U.S. 369, 373-74 (1979)), *vacated on other grounds*, 543 U.S. 1115 (2005). The Sixth Circuit "has held that a *Miranda* 'waiver may be clearly inferred . . . when a defendant, after being properly informed of his rights and indicating that he understands them, nevertheless does nothing to invoke those rights' and speaks," as Booker did here. *Id.* (omission in original) (quoting *United States v. Nichols*, 512 F.3d 789, 798-99 (6th Cir. 2008)); *see also Berghuis*, 560 U.S. at 385 ("As a general proposition, the law can presume that an individual who, with a full understanding of his or her rights, acts in a manner inconsistent with their exercise has made a deliberate choice to relinquish the protection those rights afford." (citations omitted)). Thus, "[w]here the prosecution shows that a *Miranda* warning was understood by the accused, an accused's uncoerced statement establishes an implied waiver of the right to remain silent." *Berghuis*, 560 U.S. at 384.

There is no evidence that Booker was unable to understand the significance of his *Miranda* rights or the effect of waiving them. Bower, who had dealt with Booker previously, judged him to be of "average to above average intelligence," "not a slow guy by any means." (D.N. 31, PageID # 139) Booker had had multiple prior experiences with law enforcement, including at least one that led to a felony conviction. (*Id.*) He did not appear, either to Bower or in the recording viewed by the Court, to be under the influence of drugs or alcohol or otherwise impaired. (*Id.*) The Court therefore finds that Booker understood his *Miranda* rights, as he indicated by nodding. (*See* Gov't Hr'g Ex. 2 at 2:20-2:33)

---

³ Defense counsel later acknowledged that *Miranda* and its progeny do not impose an express-waiver requirement. (D.N. 31, PageID # 179)

Nor is there any evidence that Booker was coerced into waiving his rights. He did not hesitate either in acknowledging that he understood them or in responding to Bower's questions. (*See id.*) The interaction between Bower and Booker, both as described by Bower and as shown in the bodycam recording, was calm and non-confrontational; there was no sign of intimidation toward Booker or members of his family. (*See generally id.*) To the contrary, the interactions between LMPD and the occupants of the house appeared amicable, with Bower providing and lighting a cigar for Booker and another officer bringing personal items to Booker's stepfather. (*Id.* at 5:00-6:30) In sum, based on the totality of the circumstances surrounding Booker's interrogation, the Court concludes that his waiver of *Miranda* rights was knowing, intelligent, and voluntary.

**B.**     *Franks*

Booker's second motion arises under *Franks v. Delaware*, 438 U.S. 154 (1978). Booker contends that the May 12, 2016 search of his home by law enforcement was conducted pursuant to an invalid search warrant. (D.N. 21) In his motion, he argued that the affidavit in support of the warrant contained two false statements, namely that he was "selling cocaine and other drugs from 4308 Belrad Dr while in possession of handguns" and that "[w]ithin the last 48 hours a controlled narcotics buy was made from Booker at 4308 Belrad Dr."[4] (*Id.*, PageID # 52; *see id.*, PageID # 51) At the conclusion of the hearing, Booker took a slightly different position, arguing that Bower's use of information supplied by Papermate was in reckless disregard of the truth because Bower had no details supporting Papermate's assertions and there was uncertainty surrounding Papermate's criminal history and motive for cooperating. (*See* D.N. 31, PageID # 181-82) The record does not support either of Booker's arguments.

---

[4] Attached to the motion to suppress was an affidavit by Booker denying that he sold drugs as described in the search warrant affidavit. (D.N. 21-2)

An affidavit supporting a search warrant is presumed to be valid. *Franks*, 438 U.S. at 171. A defendant is entitled to a hearing if he makes "allegations of deliberate falsehood or of reckless disregard for the truth . . . accompanied by an offer of proof." *Id.* Although Booker made this preliminary showing with his affidavit and claims of falsity, suppression is warranted under *Franks* only if he can demonstrate "deliberate falsity or reckless disregard" by the *affiant*, not the confidential informant cited in the affidavit. *Id.* ("The deliberate falsity or reckless disregard whose impeachment is permitted today is only that of the affiant, not of any nongovernmental informant."). He has failed to make this showing.

Bower testified unequivocally that he had worked with Papermate off and on for at least ten years, with consistent results. (*Id.*, PageID # 84; *see also id.*, PageID # 136-37) Sergeant King confirmed Papermate's longstanding relationship with LMPD. (*Id.*, PageID # 150) Notwithstanding the officers' varying beliefs as to what Papermate would receive in exchange for the information about Booker, the only witness whose testimony about Papermate's reliability is relevant is Bower, the affiant. *See Franks*, 438 U.S. at 171. The fact that Bower himself was unsure of Papermate's criminal history and reason for cooperating, while somewhat troubling, is of limited significance given the undisputed evidence that Papermate had been a reliable source for a decade or more.[5] (*See* D.N. 31, PageID # 84, 136-37, 149-50) And as the Court observed during the hearing, it is not unusual for a confidential informant to have a criminal record or to be working off charges. (*See id.*, PageID # 183) That one or both may be true in this case thus says little about Papermate's reliability.

---

[5] The Court would have preferred greater clarity in the witnesses' testimony, particularly Bower's. Nevertheless, the evidence presented compels the conclusion that Bower's statements were not made in reckless disregard of the truth.

Furthermore, Papermate's initial tip was corroborated by the controlled buy and Bower's personal knowledge of Booker's history of drug trafficking. (*See id.*, PageID # 101, 137; D.N. 21-1, PageID # 57)  Though the precise details of the controlled buy were surprisingly sparse, Bower testified that he and other officers monitored the purchase in real time and that he had no reason to believe the transaction was other than Papermate described. (*Id.*, PageID # 85-86; *see id.*, PageID # 125-27, 159-60, 162, 167-68, 173-74)  Bower's trust in Papermate was not reckless in light of Papermate's proven record and Bower's own experience with Booker.

### III.

For the reasons set forth above, and the Court being otherwise sufficiently advised, it is hereby

**ORDERED** that Booker's motions to suppress (D.N. 20, 21) are **DENIED**.

This matter will be set for trial by subsequent order.